**In re the ESTATE OF James W. WALTHER**

**Dorothy WALTHER and Robert Walther, (Appellants),**

v.

**Howard WALTHER and Katherine (Walther) Bain, (Appellees).**

**No. 85A02–8904–CV–00183.**

Court of Appeals of Indiana, Second District.

Aug. 27, 1991.

Catherine C. Ediger, Martin T. Fletcher, Sr., Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, for Dorothy Walther.

Michael P. O'Hara, John F. Lyons, Alan Verplanck, Barrett & McNagny, Fort Wayne, for Robert Walther.

Alan S. Brown, Todd J. Kaiser, Locke, Reynolds, Boyd & Wetsell, Indianapolis, for Howard Walther and Katherine Walther Bain.

Rex Reed, Raser, Harris, Lemon & Reed, Warsaw, for Estate of James W. Walther.

BUCHANAN, Judge.

## CASE SUMMARY

Appellants Dorothy Walther (Dorothy) and Robert Walther (Robert) appeal from the trial court's order removing them as executors of the Estate of James Walther (the Estate).

We reverse.

## FACTS

James Walther (James) died in Wabash County, Indiana on December 9, 1980. Surviving him were his wife, Dorothy, and four adult children, Robert, Patrick, Howard, and Katherine. Following James' death, Dorothy petitioned the Wabash Circuit Court for the appointment of co-executors for the unsupervised administration of the Estate, which petition was joined in by the four children. On January 9, 1981, the court granted the petition and appointed Dorothy and Robert (hereinafter collectively referred to as "the Executors") co-executors of the Estate.

Several months later, Winters National Bank and Trust Company of Dayton, Ohio, notified Dorothy that it had what appeared to be the Last Will and Testament of James. Dorothy filed a petition to probate this will and have Robert and herself remain as executors of the Estate. The court granted the petition.

James' will called for the creation of two trusts, Trust A and Trust B. Trust A was to be a marital deduction trust to be funded to the extent of the marital deduction permitted under the federal estate tax law. Under the will, Dorothy was entitled to the principal of Trust A.

Trust B was to contain all the remaining money of the Estate. This trust entitled Dorothy to dip into the principal, with the permission of the trustees, as necessary, to maintain her lifestyle. Upon Dorothy's death, the corpus of Trust B was to be divided equally among the four children.

The original trustees of both trusts were Winters Banks and Dorothy. When Winters Bank resigned from both trusts, Robert took its place. On June 29, 1984, Robert and Dorothy, who were both co-trustees at the time, moved that they be permitted to exercise their authority individually, which motion was granted. On December 12, 1986, Dorothy tendered her resignation as trustee, and Howard was appointed to replace her.

At the time of James' death, the Estate consisted primarily of stock in the Dayton–

Walther Corporation (Dayton–Walther) and Fairview Industries, Inc. (Fairview). Dayton–Walther is a manufacturer of wheels, brake drums, wheel assemblies, and mobile home vehicle parts and accessories. Fairview initially operated a foundry in Tennessee, but after incurring substantial losses and only being able to operate by borrowing heavily from its sole shareholder, James, the assets of Fairview were sold and business operations ceased in December of 1977. At that point, Fairview owed James approximately $850,000, and the company had no assets.

In December of 1979, Fairview was reactivated as a real estate development company. James loaned additional money to Fairview and the corporation purchased land in California for development. These plans were delayed, however, when Fairview encountered problems obtaining local government authorization for development and numerous law suits were filed with respect to the project.

At the time of his death in 1980, Fairview owed James $986,180. James' stock in Fairview, which had a negative book value, was distributed among his family prior to his death. Subsequently, Robert, his wife, Arlene, and their children owned 47.5% of the stock of Fairview while Dorothy obtained a 30% share. Also, Robert became president of Fairview and its sole full time employee, while Arlene acted as secretary, and Dorothy served as treasurer. Robert and Dorothy were also members of the Board of Directors of Fairview. Robert's home served as the place of business of the corporation and its books and records were kept there. During the course of the administration of the estate, the Executors loaned almost $800,000 in estate monies to Fairview.

With litigation continuing in California, Indiana and Ohio, the Estate remained open. In 1986, Trusts A and B were funded with Dayton–Walther stock, which had minimal value due to financial troubles encountered by the corporation from 1981 to 1986. However, in December of 1986, Dayton–Walther was acquired by another entity and the shareholders of the corporation received a substantial price for their shares. The value of trusts A and B had risen to over $10 million.

Fairview's prospects brightened as well during the 1980's. The California real estate was approved for development, water for the property was located, and the pending litigation was settled.

But with the dramatically increased worth of the Estate and the trusts came problems. Mistrust grew among family members about the handling of the estate and trust funds. On March 4, 1988, Howard, who had become a co-trustee following Dorothy's resignation, moved to limit the authority of the co-trustees to act individually. This motion was denied by the trial court which determined that Florida had exclusive jurisdiction over the trusts.

On March 31, 1988, Howard and Katherine moved for an accounting, claiming Robert had mishandled and misappropriated the assets of the Estate. On June 3, 1988, Howard and Katherine asked the court to remove Robert as an executor. On June 30, 1988, the Executors filed their accounting.

On September 12, 1988, Howard and Katherine asked the court to also remove Dorothy as co-executor of the Estate, alleging that she had known of Robert's mishandling of the estate funds, but failed to take action to rectify the misconduct.

On September 28, 1988, Howard and Katherine served a subpoena on Robert requiring that he appear at a deposition on October 4, 1988, and bring with him certain documents, including records of Fairview. Claiming a duty to protect Fairview's right of privacy and that the request for documents was burdensome and called for the production of irrelevant materials, Robert moved to quash the subpoena, or, in the alternative, to be given additional time to produce the subpoenaed documents. After a response by Howard and Katherine, Robert filed a supplemental Motion to Quash claiming that Howard and Katherine should be required to show how the production of the requested documents would relate to the information he had previously

provided regarding the accounting of the Estate.

On November 9, 1988, the trial court modified the subpoena and ordered that Robert produce certain documents by December 16, 1988. At Robert's request, the court extended this deadline to January 3, 1989. On that date, Robert produced several, but not all of the requested documents. The next day, Robert responded to the subpoena contending Fairview's Board of Directors had removed from his possession the books and records of the corporation, thereby rendering him unable to produce any of the books or records of the corporation. Dorothy, a board member, voted in favor of the removal; Robert abstained from the vote.

Howard and Katherine moved that Robert be sanctioned for failing to produce the specified documents and, among other things, sought his removal as co-executor for his non-compliance with the court's discovery order. Robert responded by moving for a protective order claiming that he should be relieved from the obligation to produce Fairview's records because he did not possess or have access to the requested documents. Robert also asked the court to reconsider its order compelling discovery.

On January 24, 1989 (hereinafter the January 24th hearing), the court heard arguments as to Robert's non-compliance with outstanding discovery motions (Trial Rule 37) and on Dorothy and Robert's motions to continue the February 14 hearing date on the petition to remove the Executors. No argument was heard as to the merits of removal of the co-executors or as to whether an emergency existed requiring their immediate removal. Two days after the hearing, the court issued findings and ordered the removal of the Executors:

"1. The current personal representatives of the Estate are Robert N. Walther and Dorothy Walther.

2. During the course of prior hearings in this cause, the following information was presented to the Court. Certain portions of this information was admitted by Counsel for the Representatives and certain portions were undisputed.

a. Fairview Industries, Inc. is a corporation organized in Tennessee and doing business in Florida and California. The president of the corporation is Robert N. Walther. The secretary of the corporation is Arlene Walther (wife of Robert). The treasurer of the corporation is Dorothy Walther.

b. Robert N. Walther is the sole full time employee of the corporation.

c. Robert N. Walther, his wife Arlene and his children own 47½% of the stock of Fairview Industries, Inc. Dorothy Walther owns 30% of the stock of Fairview Industries, Inc.

d. Robert N. Walther is on the Board of Directors of Fairview Industries, Inc. Dorothy Walther is on the Board of Directors of Fairview Industries, Inc.

e. Robert N. Walther's home serves as the place of business of the corporation and the books and records of the corporation were kept at his residence.

f. Fairview Industries, Inc. owes the estate more than 1.6 million dollars, but is owed by the estate $250,000.

g. During the course of administration of the estate, the executors loaned estate monies to Fairview Industries, Inc. in a sum of almost $800,000.00.

h. As custodian of records for Fairview Industries, Inc., Robert was ordered to produce certain records previously determined by the Court to be relevant to matters pending before the Court, and intended to produce evidence as to the use of funds loaned by the executors to Fairview Industries, Inc. Robert objected to such production on the basis of a fiduciary duty owed to the corporation and the corporations right to privacy. Robert was ordered to produce such records on or before December 16, 1988.

i. On motion of Robert, an extension of time to produce the records was granted to January 3, 1989.

j. At a meeting held December 18, 1988, the Board of Directors of Fairview Industries, Inc. voted to remove the records from the possession of Robert N. Walther. Dorothy Walther voted in fa-

vor of removal of the records from Robert N. Walther.

k. On January 4, 1989, Robert N. Walther filed a response to the order to produce claiming the records had been removed from him and he could not comply.

3. Robert N. Walther and Dorothy Walther owe a fiduciary duty to the Estate of James W. Walther and to the beneficiaries thereof.

4. *Robert N. Walther and Dorothy Walther owe a fiduciary duty to Fairview Industries, Inc. which they claim prevents them from disclosing its records.*

5. *Robert and Dorothy Walther have a conflict of interest in their separate duties to the corporation and the estate.*

6. *Although the Court cannot at this time draw any conclusions as to why it has occurred, on its face there is a presumption of self-dealing in the activities of the executors in loaning money to a corporation that is owned 77½% by them or their immediate families, in which they are officers in which they serve as directors.*

7. Because Robert N. Walther will be hereby removed as executor and Dorothy Walther solely remain as executrix and because Dorothy Walther has a conflict of interest in her role as Treasurer of Fairview Industries, Inc., *an emergency exists justifying her removal as executrix.*

8. The Court has authority on its own motion or on motion of a party to remove the personal representatives under I.C. 29-1-10-6.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:

1. Robert N. Walther is hereby removed as executor of the Estate of James W. Walther.

2. Dorothy Walther is hereby removed as executor of the Estate of James W. Walther.

3. The hearing on the Petitions set February 14 and 15, 1989, is now made moot, but the Court now schedules further hearing February 8, 1989, at 11:00 a.m. for the purposes of considering the appointment of a successor executor.

*Record* at 757-60 (emphasis supplied).

Subsequently, Dorothy filed a Motion to Reconsider and Motion to Correct Errors with attached affidavits showing that, following the adverse judgment, she had resigned her positions with Fairview and disposed of her stock in the corporation. By these actions, Dorothy claimed she had eliminated what the court saw as a conflict of interest, thereby entitling her to reappointment as an executor. The Court denied the motions.

### ISSUE

Dorothy and Robert raise several issues for our consideration, which we consolidate into one:

Did the trial court err in removing Robert and Dorothy as executors of the Estate?

### DECISION

PARTIES CONTENTIONS—Robert claims that an emergency did not exist and, therefore, the trial court erred by not following the statutory requirements of an order to show cause, notice and a hearing prior to his removal. In addition, Robert says that if the court's order was based on a sanction for failing to comply with discovery, the court should have imposed a lesser discovery sanction before issuing a default judgment against him. Howard and Katherine respond that the facts do support the finding of an emergency and that, nonetheless, removal of Robert and Dorothy was justified as a Trial Rule 37 sanction for non-compliance with discovery.

CONCLUSION—The court erred in dismissing Robert and Dorothy without following the process mandated by Ind.Code 29-1-10-6(a)(1988).

The interesting feature of this case is that the trial court prematurely ordered removal of the co-executors. At the January 24th hearing it had before it evidence of violations of T.R. 37 (discipline for failure to comply with discovery) by Robert.

The court, however, grounded the order of removal, issued two days after the January 24th hearing, solely on the basis of a "conflict of interest" and self-dealing of the executors and made no reference to T.R. 37. *Record* at 758.

■ In concluding that it had the authority to immediately remove Robert and Dorothy, the court cited IC 29–1–10–6, which, at the time, provided in pertinent part:

"When the personal representative becomes mentally incompetent, disqualified, unsuitable or incapable of discharging his duties, has mismanaged the estate, failed to perform any duty imposed by law or by any lawful order of the court, or has ceased to be domiciled in the state of Indiana, the court may remove him as hereinafter provided:

(a) The court on its own motion may, or on petition of any person interested in the estate, *shall order the representative to appear and show cause why he should not be removed. Such order shall set forth in substance the alleged grounds upon which removal is based; the time and place of the hearing;* and may be served upon the personal representative in the same manner as notice is served pursuant to the provisions of this article.

(b) The court may without motion, petition or application, for any such cause, in cases of emergency, remove such personal representative instantly without notice or citation." (emphasis supplied)

As indicated above, the court's findings and removal order followed a combined hearing on Howard and Katherine's motion for discovery sanctions and Dorothy and Robert's motions to continue the hearing on their removal. The court never issued an order for the Executors to show cause why they should not be removed and never held a hearing on the grounds upon which the court based its order. By proceeding to remove the executors without first following this process outlined in IC 29–1–10–6(a) (hereinafter "Subsection (a)"), the court apparently concluded that an emergency existed which gave it authority to immediately remove both Robert and Doro-

thy pursuant to IC 29–1–10–6(b) (hereinafter Subsection b), though the court's reference to an "emergency" refers only to Dorothy. *Record* at 758.

■ So it becomes pertinent to determine whether the court's removal of the co-executors can be justified as an "emergency" as provided by Subsection (b). We follow the usual directives—a statute must be construed to give effect to legislative intent. *Wallis v. Marshall County Comm'rs* (1989), Ind., 546 N.E.2d 843; it should be construed according to its plain meaning, *St. Germain v. State* (1977), 267 Ind. 252, 369 N.E.2d 931; and words and phrases are to be taken in their plain, ordinary, and usual sense unless a different purpose is manifested by the statute itself. *Marion County Sheriff's Merit Bd. v. People's Broadcasting Corp.* (1989), Ind., 547 N.E.2d 235.

Our supreme court has had a few words to say about an "emergency" in this context:

"The emergency ... should be clear and imperative before a court should take such a drastic measure to remove an executor or administrator without citation so that the parties in interest may have their day in court."

*State ex rel. Cassel v. Johnston* (1933), 204 Ind. 563, 570, 185 N.E. 278, 281; *see also May v. Sansberry* (1949), 119 Ind.App. 523, 86 N.E.2d 88.

Black's Law Dictionary defines "emergency" as "an unforeseen combination of circumstances that call for immediate action." Black's Law Dictionary (1979), 5th Ed. Webster defines the term as "an unforeseen combination of circumstances or the resulting state that calls for immediate action." Webster's Ninth New Collegiate Dictionary (1985).

From these definitions, an "emergency" would seem to indicate an unforeseen situation, which upon discovery, requires immediate action to prevent harm. This was not the situation presented in this case. By the time the court entered its order removing the Executors, they had administered the Estate for eight years. The accusations

that they had a "conflict of interest" and were engaged in "self-dealing" in their transfer of estate funds to Fairview, were several years old at the time of the hearing. Given that passage of time, it is difficult to conceive of the "unforeseen circumstances" that necessitated the Executors' immediate removal without providing Robert and Dorothy their day in court to show that they had not mishandled the financial affairs of the Estate. *See* IC 29–1–10–6(a).

This court has previously concluded that a conflict of interest, a ground for removal cited by the trial court, by itself would not constitute a sufficient basis to remove an executor. *Hauck v. Second Nat'l Bank of Richmond* (1972), 153 Ind.App. 245, 286 N.E.2d 852; *See also Lieth v. Young* (1966), 139 Ind.App. 525, 213 N.E.2d 347. While there may well have been "self-dealing" involved in the Executors role in loaning estate money to Fairview, the court's finding in this regard reflects its uncertainty as to the issue ("the Court cannot at this time draw any conclusions ..." *record* at 758), thereby emphasizing the need for the full scale hearing required by Subsection (a).

To permit the court to bypass this statutory procedure on the basis that the "conflict of interest" and possible "self-dealing" of the executors constitutes an "emergency" would certainly expand what was intended as a narrow exception to the procedural protections afforded executors who are faced with the prospect of removal. As our supreme court concluded in *Cassel*, removal under the emergency provision is a "drastic measure" that denies an interested party his or her day in court, with proper notice. *Id.* 204 Ind. at 563, 185 N.E. at 281. The January 24th hearing and the subsequent findings and judgment do not comply with the procedure contemplated by IC 29–1–10–6.

Judgment reversed for further proceedings consistent herewith.

SHIELDS and CONOVER, JJ. concur.